## Lease of Vacant School to Religious Group

JOSEPH L. DONNELLY, Deputy Attorney General, and THOMAS D. MCBRIDE, Attorney General, September 12, 1957.—We have received your request, dated September 4, 1957, for advice concerning the meaning and effect of section 775 of the Public School Code of March 10, 1949, P. L. 30, as amended, 24 PS §7-775.

Specifically, you inquire whether the provisions of section 775 authorize the School District of Lebanon City to lease an abandoned public school building to the appropriate officials of St. Mary's Parish of Lebanon City for use as a parochial school.

St. Mary's Parish is affiliated with the Roman Catholic Church. The proposed leasing agreement, which is for a term of one year, would require St. Mary's Parish to pay an annual rental to the school district of $1,200 and to be responsible for all costs incident to the operation of the school building. We understand that the school district has no present need for the use of the school building in question and that, if the building may be leased to St. Mary's Parish, the building will be used in connection with the education of some 250 children.

Section 775 of the Public School Code, 24 PS §7-775, provides, inter alia, that:

"The board of school directors of any school district shall have power and authority to lease any part of their respective school building, equipment, and premises, or any vacant building, for any educational purpose. Such leases shall be subject to the terms and regulations which may be adopted by the board of school directors, and except in districts of the first class, shall be further subject to the approval of the State Council of Education."

It is at once apparent that the proposed leasing agreement between the School District of Lebanon City and

St. Mary's Parish is within the statutory authorization
for the lease of "any vacant building, for any educa-
tional purpose." Moreover, under the facts presented,
there can be no question as to the reasonableness of the
term of the lease or the fairness of the consideration
therefor. Since the lease is for a period of only one year,
there will be no problem in recovering the building at
the end of that time should the school district desire to
use the building again; the fixed rental involved,
$1,200, is substantial, not merely nominal, and the
lessee is additionally obligated to maintain the building
during the term of the lease. The advantages of the pro-
posed leasing agreement need only be mentioned to be
appreciated: The school district will receive the fixed
annual rental plus the maintenance, and possible im-
provement, of a building which, if left vacant, would be
susceptible to vandalism; and, at the same time, there
is implementation of the traditional policy of the Com-
monwealth of encouraging educational opportunities
for the young.

Nor does the fact that the proposed lessee is a reli-
gious group raise any constitutional objections to the
lease. Article X, sec. 2, of the Pennsylvania Constitu-
tion, which provides that no money raised for the sup-
port of the public schools shall be appropriated to or
used for the support of any sectarian school, is plainly
inapposite. Equally inapposite are the provisions of the
Federal and State Constitutions which forbid the estab-
lishment or preference of religion. We know of no con-
stitutional prohibition against the leasing of an unused
public school building for a reasonable time and for a
substantial consideration to a religious group.

Section 775 requires that where a board of school
directors, other than in a district of the first class,
leases a vacant building for educational purposes, such
lease shall be subject to the approval of the State Coun-
cil of Education.

Since the next meeting of the State Council of Education is not scheduled until September 18, 1957, you also inquire whether the superintendent of public instruction has ad interim authority conditionally to approve a lease entered into under the provisions of section 775 pending formal action by the State Council of Education. If the superintendent does possess such authority, it must have its root in the statute laws of the Commonwealth, either expressly or by necessary implication. We have been unable to find any such statutory authorization.

Section 408 of The Administrative Code of April 9, 1929, P. L. 177, 71 PS §118, provides that:

"The State Council of Education shall consist of the Superintendent of Public Instruction, who shall be the president and chief executive officer thereof, and nine other members."

However, the fact that section 408 of The Administrative Code designates the superintendent of public instruction as "the president and chief executive officer" of the State Council of Education does not, without more, clothe the superintendent with ad interim authority to act for the State Council of Education in connection with section 775 of the Public School Code of 1949, and nowhere in the Public School Code of 1949 or in The Administrative Code of 1929 is any additional authorization to be found.

It is, therefore, our opinion and you are accordingly advised that:

1. Section 775 of the Public School Code of 1949 authorizes a school district to lease, for a reasonable term at a fair consideration, an unused public school building to a religious group for parochial school use.

2. The superintendent of public instruction has no ad interim authority conditionally to approve such a lease on behalf of the State Council of Education.